Elizabeth Weinstein v. Plaintiff Timothy Barnes Defendant Apelles concedes that the basis of the District Court's dismissal of Mr. Barnes' precision claims is in error, given the Supreme Court's decision in Chesnofsky. Instead, Defendant Apelles argued that a reversal agreement here would be improper because it would be futile, and that's based on their argument that the District Court has found that the creditors didn't receive notice of Mr. Barnes' decision. That argument is in error for two reasons. First, it improperly incorporates the question of whether a creditor receives notice of precision into Mr. Barnes' claim for precision. And second, because the District Court's finding that the creditor didn't receive precision is itself in error. Okay, can you focus on the second one for me, please? And I want to know what the record shows in this respect. A notice of precision was sent to Chase, a bank, not the home service, but it was returned un-delivered to Chase Bank. Correct. It was sent to the address that was in the papers and said, this is the address that you should send something to. That's correct. Does the record reflect whether or not Chase received actual notice of the precision because the home servicer said, well, we got this piece of paper in the mail, here it is? Importantly, Your Honor, no, it doesn't. That's a fundamental thesis for why we argue that this case should be remanded, because the record does not show whether or not the creditor had actual notice. Secondly, that's the legal question. If it was assumed that's the case and what happened was the loan servicer went to Chase and said, we received this notice of precision in the mail and gave it to Chase within the prescribed period, would that satisfy the statute? Yes, Your Honor, that would satisfy the statute. The question under this statute is whether the creditor received notice of precision in this case, and I should say for the record that Plaintiff disputes the fact that the creditor is in fact Chase Bank USA. There's evidence cited in the initial pleadings that Chase Bank USA assigned the loan to Chase Home Finance. It's an additional reason why the finding may be in error. But to Your Honor's question, Chase Bank USA must have received notice in order for its obligations to arise under the law. However, the district court looked only at the question of whether Chase Bank USA received notice directly from Mr. Barnes. While the statute in no way is limiting, the statute just requires that notice be received. That notice could come from any source. Certainly the servicer would be the likely party to provide that notice, and considering the mission of the law to protect consumers, that there would be no reason to limit the scope of the question of where notice may come from. This may not be material, but do we know why the notice was undelivered? Anything the envelope indicated? Was it an address? Was it an institution postage? Anything about why it was returned as undelivered? No, Your Honor. The record is unclear. It's a problematic issue that needs to be delved into further in discovery if possible. What we do know is that the albacore completed his duties under the law. He mailed notice to the proper party within the buffer model. Why would you care whether, at this point, whether Chase Bank refused to sign the letter when it came, or whether they got notice from Chase Home Finance? Why would you care? Don't the new regs state that advising the servicer in an alternative is efficient? And if so, why isn't your client done what he's supposed to do? Yes, Your Honor. Our client has done what he's supposed to do. So why would you care about these other issues? Why would you care to develop the record on that? Well, the district court is entitled to the way that the district court decided the case. It made a finding that the creditor was Chase Bank USA. Here, the albacore blanks were trying to establish that the albacore did everything within his power to inform the parties that he knew of. The consumer obviously lacks the sophistication of the bank and all of the parties and the relationships between the parties. But the point here is that the albacore knew of two separate parties that were related, the two Chase defendants. He sent notice to both of them, and that notice was received regardless. In most instances, the notice is received directly from the albacore. That's the reason why it's the simplest way to receive notice. It's the way that's most common. In most cases, that would be as far as inquiry need go. In this case, as Your Honor has recognized, it's necessary to look beyond that. Well, isn't this what Judge Biby's asking? Judge Biby's asking whether or not on this record we should simply tell the district court that the notice was timely or the notice was proper because it was sent to the loan service during the race, and it seemed to indicate that it was okay. Your Honor, it's a question I haven't, that I didn't address in the briefing.  I note that under, I recognize that the regulations have updated the district courts, or excuse me, the circuit courts, holding in Miguel. Here, the albacore, it followed through with his obligations under Miguel by notifying the creditor, but I recognize Your Honor's question on behalf of your briefing. I'm just wondering, are you willing to assume that that burden, excuse me, that's a burden you probably don't have to satisfy? And I'm not sure why you should care about what Chase Tudor didn't do with the water when it came. At this point, I'm not sure why it matters. Your client likely did everything he was responsible for doing, and now the burden's going to shift to Chase. That's an argument I agree with, Your Honor. That makes good sense. And, again, considering. Aren't you thrilled to adopt that? I'm thrilled to adopt that, Your Honor. All right. Not every question is true. If Your Honors would like, I'd be happy to address the question of Mr. Barnes' claim for rescission and the fact that defendants' argument that the question of whether the creditor received notice is not a necessary question to consider in terms of Mr. Barnes' claim for rescission and as the basis for the district court's dismissal of the claim for rescission is an error under Jastrzynowski. Remanded that claim as true. So is Mr. Barnes still in the House? Yes, Your Honor. Is Mickey Demons anybody? I don't know the answer to that question, Your Honor. And what he wants to do is to get his deposit and his earnest money back and get Chase back in the House? He's, I don't have, I don't have. He wants to receive. That is my position. He wants to receive the creditors, so he's prepared to move out of the House and get the House back to Chase? I don't have an answer to your generous question. The House hasn't been closed, Your Honor? No, it hasn't. Interrogator, are you making your point that you just want to see? Good morning, Your Honors. Alan Schoenfeldt for Chase Bank Finance, Chase Bank USA. I'm happy to answer whatever questions the Court may have. My colleague, Mr. Thomas, has any questions specific to Fannie Mae or LBPS in this case. To go to Your Honor's question, Judge Bidey, I think your reference to the regulation is the reference to that commentary from the staff. Is that what you were talking about? The staff commentary makes clear that the creditor may designate an agent to receive the notification, but there's no allegation that happened in this case, nor did it happen in this case. The notice of right to cancel specifically states Chase Bank USA MA as the party to whom notice must be given. What was Mr. Barnes supposed to do? Mr. Barnes sent his notice to Chase Bank USA on August 4th, 2010. He received the certified receipt for Chase Bank Finance on August 8th. Presumably he received the unsigned notice for Chase Bank around the same time. He still had over three months to try to make contact with Chase Bank USA. This is not Mr. Barnes' fault that a certified letter, an address to the only address that he's got is returned? This is not his problem? I don't think that it's a question of fault. I think the question is, rescission is a draconian remedy. Congress was very careful to curb any risks, but instead they're providing a statutory right of rescission by providing a theory to state our pathway. So let me answer the question I asked your colleague here. Let's assume for the moment that Chase Bank received the notice because Chase Home and so forth said, hey, Chase, you received this notice. Was Chase Bank under those circumstances entitled to say, ha-ha, we didn't receive it directly from Mr. Barnes, so we need not receive it. Let me answer that question for you. So the answer is, there would be no ha-ha, but the notice has to come to him. So your position is that even if your position is that the statute and the rights require that the notice come to you directly from him, even if somebody with whom you have a servicing relationship brings you the notice from him and says it was received? That's correct. So I think the statute requires notice by the obligor to the creditor. This court's decision in McGill holds very clearly that service to an agent, what it calls the servicing agent, is ineffective. That's right, but we did not deal in that case with the question of whether or not service to an agent who then notifies the principal that he has him the actual notice is sufficient. Just sending it to a servicing agent myself is not enough. That's right, Your Honor, but a couple of things. Number one, the court didn't inquire in McGill whether that was the case. The court said when you send it to a servicer, it doesn't suffice because it requires service to the borrower. There may be no further inquiry as to whether that's the case. There's a difference in this case. The difference in this case is Mr. Barnes, and for reasons that the record doesn't reveal, that attempt was unsuccessful. Now, in that fact, in the facts of McGill, and in the fact that I'm assuming what this record doesn't tell us, which is that your client knew that his notice of rescission had been sent, under those circumstances, why shouldn't we say as close to that? There is no allegation in the record that there was communication between us. There's no discovery in that issue. Well, there's been discovery on lots of different instances. Are you willing to represent to us that your client had no knowledge of the notice of rescission within the relevant time period? I can't make that representation, Senator. I just don't know, but there's no allegation. I don't make sure I understand your position. Your position is that even if discovery were to show that your client had actual knowledge, that nevertheless, if it isn't done in the way that the statute in your reading requires, through no fault of the plaintiff, but totally because for unknown reasons, the letter was undelivered, that it doesn't matter that you had actual knowledge. That's your position. That's my position. In fact, that's my position. So where in the world would that make any sense? So there was a proposal before the Board of Governors of the Federal Reserve, when it was responsible for implementing TILA, to expand the regulation to say that actual notice to the creditor would suffice for purposes of satisfying the rescission obligation. And the Board defied to implement or to adopt that regulation. The statute has always been entirely clear. What you need is notice from the borrower to the creditor. And the reason that's so is because, as Justice Segar points out in his decision in Beech for a unanimous Supreme Court, there are real risks that tend into a statutory right of rescission that provides that upon mere notice by the borrower to the applicor, the security interest in the property is dissolved as a matter of law. And then there's this process to unwind the transaction. Congress sought to curtail that risk by providing a narrow pathway for a borrower to rescind the mortgage. The borrower has to notify the creditor. He has to do it at the creditor's designated place of business. He has to do it on a particular timeline. I understand that it looks from the Court's vantage point like we're asking a lot of a borrower in this circumstance. But Congress was very clear, this is a draconian remedy for completely immaterial, for no reason at all in a three-year period, or for completely immaterial violations of these disclosures going to a three-year period. A borrower can just send a notice and say, I rescind, and walk away from the transaction. So it's in view of the very seriousness of the rescissionary remedy that Congress prescribes what looks like a customer-unfriendly regime. But the rule is what the rule is. And as established by the statute, the regulations, and I think Miguel, understanding that it didn't address this precise factual scenario, it's very clear that what's required is notice directly from the borrower to the creditor. And there's no case in which I'm aware, I apologize if my English is finished, go ahead. I was just going to say there's no case in which I'm aware that says that there's some sort of substitutionary process here where you can provide notice to some other party and it qualifies as actual notice. And that's what my question goes to. I'd like to get back to the staff commentary. The story you began was by answering that the staff commentary says that the creditor may designate an agent to receive the notification. The very next sentence says, where the creditor fails to provide the consumer with the designated address for sending the notification precisely. Delivering notification to the person or address to which the consumer has been directed to send payments constitutes delivery to the creditor. Now, I understand that this is not precisely the case where the creditor fails to provide the consumer with a designated address. The problem is that we're going to incidentally with a designated address that actually works. So you're going to credit them with a designated address, but it didn't work. In this case, mail was not delivered to Chase Bank USA, and I have no idea why that's the case. I'm not aware of that. The address was a bona fide address. For whatever reason, it didn't work in this case. And again, Mr. Barnes had more than three months to remedy that by either sending it again, calling them up, sending it by e-mail, or whatever else. Let me ask you a question. It was to be sent to notice on the last day, and it was received the day after. Under the regs of it, it was going to be dropped. Well, what you're saying is it's to be penalized because he sent it before the last day? It's not to be penalized. I think this is the rare case where there's no dispute that it wasn't actually received. In the minor enough of these cases, there's going to be no dispute that it was sent and that it was received. In a very small minority, you're going to have to apply the mailbox rule because there's no dispute it was sent. And the creditor actually denies having received it. Here is the very rare case where it was sent, and there's no dispute that it wasn't received. And under those circumstances, the rule is that he has to notify the creditor, and he failed to do that. But you have received them. That's not what it means. You said he has an obligation once it comes back to send it again. Let's assume he sent it on the last day it came back. Your position then would be you couldn't possibly remedy it, right? I think that's fair. You're reading the law. To be very clear, it's a three-year rescissionary period that's only told if the borrower failed to receive the requisite disclosures. The expectation here is that in the vast majority of cases, a borrower is going to attempt to rescind during the unconditional period, the three-day period after the closing of the loan. So if we're talking about an attempt to rescind, we're already talking about the tail end of the period, and we're also talking about the very, very circumstances. This is the only case in which I'm aware. Also, my part of the question, you said that one of the things the borrower's been on was to call, but a call wasn't satisfied with the schedule. Yeah, but he could have figured out why it wasn't received or made some provision for ensuring that it was actually delivered. You're suggesting he should have made an inquiry. Sure. I mean, his obligation under the schedule was to notify the creditor, which I understand. So I'm going to make sure I understand. The address to which this was sent is an office. Correct. With a human being sitting there at least doing regular work. Presumably, that's right. So the mailman, if it's working, the mail person, if it's working the normal way, comes to get certified. Correct. So he wants a signature. Correct. So if the facts were hypothetically that the person said, I'm not authorized to sign it, and that's why it was returned, you still say that it's sufficient to comply with the schedule? Those certainly aren't the facts here, and I'm not alleging that. Sure. Well, there's no allegation that that's the case here. I'm not opposed, because you would have to have a mailman who can remember all this, which is maybe a 10, maybe 10, but we don't know yet because the story of that has not taken. But, anyway, assuming that, I just want to know what your position is. I'm not aware what the Postal Service Policy is. If the person you've reached can disclaim responsibility for signing, so, right now, an organization as big as Chase, presumably the person who was there to receive the mail, can sign for it. It happened with Chase and Finance. There's no reason to think that anything different went on with Chase Bank USA and A. There's nothing in the record that explains why notice wasn't received by the bank that day, and certainly, you know, notwithstanding the impact of it in the brief, there's no suggestion of bad faith on Chase's part. There's nothing that Chase has alleged to have done to disclaim responsibility for this mail. It happened not to have been delivered, and Mr. Barnes was aware of that with three months to go in his rescissionary period. If I may, Your Honor, I'd like to go back to your point about the language of the staff commentary. What that second sentence says is, whether the creditor fails to provide the notice, the consumer with the designated notice for sending the notification of rescission, delivering notification elsewhere may qualify. But that's because the regulation allows the creditor to specify a designated place of business, and the reason for that is to make sure that rescissions can actually take place in the time allotted. If you have a three-day period, those loans generally aren't even funded, so you want to make sure the creditor has the opportunity to do it, so you specify a place of business to receive the rescissionary notice. The regulation is insistent that the creditor can specify the place of business where they would receive it. Let's look at that regulation. Let's apply it to the facts of this case. The regulation says if you haven't designated a place, you can send it to the service. Here you have designated one. The consumer has made, according to this record, at least every effort that the statute requires to send it to you, and it gets returned. Isn't that a rough equivalent of the circumstances the commentary points out? I also would say that it would be okay under that circumstance, with all of your worries about mechanical rescission and everything, it would be okay under that circumstance to say that you've got a notice. Why in the world would you be okay under this circumstance? So, with respect, I dispute the premise that he did everything he could have done. Well, I know he did everything he should have done. So do I. And I also don't think, well, I don't think that's quite right, but I also don't think he did what was required of him under the statute, because I think what's required under the statute is to notify the creditor, and that means, as I understand, like my colleague on the other side, not to dispute, the creditor needs to receive the notice, and that's not what happened. I understand, but now I see your position. Sir, I'm going to your question. Yes, ma'am. To be fair to you, I don't get your position. You're doing your best, doing your possible best to bail water out of the canoe as fast as you can. I don't blame you for taking it. I blame your client for taking it, but I don't blame you. Well, I appreciate that, Your Honor, but to go to your question, the reason the staff commentary allows a creditor or allows a borrower to send it to either the creditor or the servicer in circumstances where the creditor hasn't identified it is this. These are large organizations, and they need to figure out a way to receive these notices. And if they articulate a preference for sending it to a particular place in order to make sure that they are able to receive the rescissionary notices and to act on them as the statute requires, either in the three-day period or in the 20-day period, I should be honored because Congress recognized and the Board recognized and the Bureau after it that this is a really draconian remedy and this is something that needed to be taken seriously. Let me just follow you up a little bit on Judge Hurwitz's point. On one hand, I understand the point you're making about why you need procedures like this because you would open serious defaults that would be created. But then you've told us that that's not really the case. This is sort of suing generous. We've never really seen a case like this before. So why the heck is Chase disputing this? I can't tell you the answer to that. I know you can. I appreciate that. I understand the point. But the legal rule here is that an obligor needs to notify a creditor. And that means, and as I understand it, that's no longer disputed, that an obligor needs to ensure that they're received by the creditor of the notice. There is no provision of the statute that ranks the commentary and there's no case that supports that service by proxy to a servicer or anyone else constitutes service to the creditor. One last question for you. Am I correct that there's no case anywhere with these things? I'm not aware of any case with these facts. I think that the closest case is Miguel, where this court held that providing notice to a servicer, a servicing agent, does not constitute service to the creditor. And so the factual distinction between Miguel and this case, I think, are immaterial to the ultimate resolution because there's no dispute in this case that the creditor was not exactly notified. Mr. Simcoe, we're taking away all of your time. I will allow the next Mr. Thomas if he wishes to be heard. May it please the Court. I'm Tom Thomas for Appellees Andy A. and IBM LBPS. In light of the Court's questions, Andy A. stands on his briefing. From Andy's perspective, this is more of an issue regarding Chase, the loan, the district court found that the loan was service-transferred to a transferring family on November 16th, 2010, and for the reasons articulated by Chase, whose creditor wasn't notified. At this point, you can stand in the suits of state. You don't have any additional rights. You only have whatever you got from Chase when you took the property. Yes, I believe that. So whatever rule or act we issue here, you're going to be stuck with it? Yes, I believe that's correct in terms of our decision. Okay. And do you have any additional updates to the questions that I asked to Ms. Weinstein concerning the owner still in possession of the property and could very well not be making payments? Thank you, Your Honor. There was a state court foreclosure case that was commenced and is currently stayed or paid at the account of this case. My understanding is that no payments have been made by the borrower. Thank you, Mr. Thomas. Ms. Weinstein, you have some time remaining. Thank you, Your Honor. Just an additional point that remand in this case, it's necessary to remand the case with respect to all defendants, and that is because the district court will be charged with crafting an equitable remedy that may well include all of the parties, as Your Honor's know. Oh, yes, because I'm judged by the issue at the beginning, and I'm still not clear. What's your client want? Precision, Your Honor. I know, but what if he'd like to give them back the house and leave, right? I don't have an answer, Your Honor. Well, isn't that what precision means? That is what precision means. And they've begun a foreclosure action. They say, we'd like to take back the house and have you leave. I think this is a non-recourse transaction, isn't it? I don't know. It's a house, so my guess is it's a non-recourse transaction. So I asked the case what they were thinking about, and I guess the answer would be the same thing. They're willing to take back the house. They don't have any ability to chase your client, chase your senior client for money under those circumstances. What do you want the district court to do? It's like, okay, can't the parties get together and just simply give them back the house? That's a possibility, Your Honor. I mean, so your precision, your client, we would underdo the transaction, which means I think that she's obligated to give her client back premise money or the down payment or maybe the fees that were there. But if the client's been living in the house without making payments, then maybe that your client actually owes more money on the house than the precision is worth. I'm just wondering what you do. How does he get together and figure out how to get the house back into Chase's hands or Fannie Mae's hands now and get your client to move someplace else? I understand your Honor's position, and I'm hopeful, and I believe my client is hopeful, too, that this litigation can be resolved. Would this case benefit from us referring it to our mediation services? No. First, because the record is so unclear, and because the district court has seen it. So it's a bad decision perhaps, and no, you've got a good record. Chase's case has a lot of concern, primarily in terms of the remedies. Chase supports an opinion that he doesn't want, and then the client gets out of the house. So why do we need this case? We're not going to. Why don't you want to talk to the other side about a settlement? Your Honor, after the case is remanded and the district court makes findings that are in accordance with the law and in honor of my client's proper pursuit of his remedies, my client, I imagine we would have to be in that opposition. We're requesting remand. We're requesting that this wrong district court decision that was wrongly decided be remanded and that the actual record be expanded if necessary or otherwise, that the district court properly decide. I don't know why. It's your client's choice, but I just don't understand it. You've heard us give your officer a hard time, and so he would have a motive to come to a resolution, and you say, oh, no, we want a finding before we come to a resolution. And, by the way, judges, I'm not really in a position to tell you what my client really wants here. I'm keeping that a deep, dark secret, which sounds kind of suspicious to me. I don't need to engender any suspicion. It's simply not a matter of discussion with my client, and I would be happy to, and we can provide an update to the court as soon as that conversation is had. It's just simply not a matter of discussion. If the clients have any interest in mediation, I suggest there's blood, snow, as soon as possible. Very good. Then I will take your honor up on that offer and discuss it with my client, and we will update the court. Thank you. All right. We thank counsel for the argument. The case is Barnes v. Shapestone. Finance is subpoenaed.
judges: Bybee, Hurwitz, Rakoff